UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Christopher J. Bolt,

Petitioner,

vs. REPORT AND RECOMMENDATION

Constance Reese, Warden,

Respondent. Civ. No. 01-2091 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 28th day of June, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Petitioner's Petition for Writ of Habeas Corpus Title 28 U.S.C. §2241. The Petitioner alleges that he is being illegally detained, by the Respondent, for reasons which are violative of his rights under the Constitution, laws or the treaties of the United States. The Petitioner appears by Virginia G. Villa, Assistant Federal Defender, and the Respondent appears by Lonnie F. Bryan, Assistant United States Attorney. For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied, without prejudice.

21

FILED JUN 28 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. Factual and Procedural Background

On January 13, 2000, the Petitioner was charged, in the United States District Court for the Western District of Wisconsin, with the Unlawful Transport of Firearms, in violation of Title 18 U.S.C. §922(g) and (f). See, Attachment B to Respondent's Response,[1] at 1. On January 18, 2000, the Petitioner was granted pretrial release, with certain conditions, but he absconded within a week. See, Attachment C, at 1. He was then missing for over ten months. Id. Once the Petitioner was again arrested, the Government moved for detention, and a Hearing was held on December 21, 2000. Id. United States Magistrate Judge Stephen L. Crocker directed that the Petitioner be detained pending a Trial on his case. Id. The Magistrate Judge specifically ruled as follows:

> Therefore it is ORDERED that the defendant is committed to the custody of the United States Marshals Service for confinement at the Dane County Jail separate from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with his attorney.

Id.

[1]Unless otherwise noted, all attachments referenced are attached to the Respondent's Response, which was filed on December 26, 2001 [Docket No. 6].

On the same date, and upon Motion of the Petitioner, the Court also ordered that the Petitioner undergo a competency evaluation. Id. at 2-3.

The Hearing was set for July 6, 2001, in order to assess the Petitioner's competency to stand Trial. See, Attachment D, at 1. At sometime in either late June, or early July of 2001, however, the Petitioner experienced chest pains, and he was transported to a hospital. Id. There, tests revealed sufficient abnormalities to warrant major and invasive testing of the Petitioner's heart. Id. As a result, on July 3, 2001, the Magistrate Judge canceled the Competency Hearing of July 6, and ordered that it be rescheduled once the Petitioner was released from the hospital. Id. He further ordered that the Petitioner be delivered to the Department of Corrections for the State of Wisconsin, which was to take, and maintain, custody and control of the Petitioner at a secure wing of University Hospitals in Madison, Wisconsin. Id. at 5.

On July 9, 2001, the Petitioner was ordered to FMC-Rochester, by the Magistrate Judge, for "emergency medical care and evaluation." Id. at 6. The Judge specifically noted:

> On July 9, 2001, this court held a telephonic conference to advise the attorneys of my decision to transfer defendant Christopher John Bolt to the Federal Medical Center at Rochester, Minnesota. Given the circumstances reported to me by the Marshal's Service which I passed along to attorneys, both assistant

> United States Attorney Robert Anderson and defense counsel Roger Klopp agreed that transfer was appropriate.
>
> For the time being I am content to attempt to wait out Mr. Bolt. If he persists in his refusal to allow necessary medical treatment over the long haul, I will convene another status conference with counsel to determine what to do next. The parties had no other matters to bring to the court's attention.

Id. at 6.

The Magistrate Judge's Order further provided that "[u]pon completion of medical treatment necessary and evaluation at FMC Rochester the Federal Bureau of Prisons shall forthwith release Christopher John Bolt to the custody and control of the United States Marshal." Id. at 7.

By Order dated August 1, 2001, the Magistrate Judge noted the following:

> [The Petitioner has] submitted to the court a rather pointed letter taking exception to my July 3, 2001 order. In his letter, Bolt demands that I consider myself "recused" from this case and he demands that I order his attorney, Roger Klopp, to return his legal materials and then remove him from this case.

Id. at 8.

The Court denied the Petitioner's Motion for recusal, as well as his Motion for a new attorney. Id. Similarly, on August 21, 2001, the Court further denied the Motion of the Petitioner's court-appointed attorney to withdraw, and for the appointment of replacement counsel. Id. at 9.

As of yet, the Court has not ruled on the Petitioner's competency to stand Trial. In fact, this Court has taken judicial notice of the Docket Sheet in the Petitioner's criminal case, which was last updated on June 7, 2002. At that time, it appears that the Magistrate Judge again directed that the Petitioner be committed to the custody of FMC-Rochester for a period of thirty days, in order to conduct a new competency examination.

On October 10, 2001, the Petitioner filed a pro se Application for a Writ of Mandamus in the United States Court of Appeals for the Seventh Circuit. The substance of the Petition is not known to this Court, but we do note that the Petition was denied on October 26, 2001, without further comment. See, Attachment F.

On November 16, 2001, the Petitioner filed this Petition for Writ of Habeas Corpus under Section 2241. As the basis for his relief, he states as follows:

> Extraordinary physical impairment provision (home detention) USSG #5H1[.]4.[2]

---

[2]United States Sentencing Guideline 5H1.4 ("USSG 5H1.4") provides as follows:

> Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a

(continued...)

> (a) Petitioner was declared mentally incompetent and physically disabled January 7, 2001 and again on July 9, 2001.
>
> (b) Genuinely unavailable for and no possible recovery is expected due to these impairments and the petitioners advanced age of 77 [years] and 6 [months] and severely advanced medical conditions.

Petition, at 3.

In conjunction with his Petition, the Petitioner filed an Application to Proceed In Forma Pauperis, which we granted on December 3, 2001. Docket No. 5. We further directed that the Federal Defender's Panel represent the Petitioner in the matter, as the Petitioner was claiming that he was mentally incompetent. Docket No. 4.

Thereafter, the Petitioner's appointed counsel submitted a Memorandum of Law, in which the Petitioner contends that he is being illegally held in custody at FMC-Rochester, in violation of the Order of December 21, 2000, of the United States District Court for the Western District of Wisconsin,[3] because there is no evidence

---

[2](...continued)

> seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

[3]The Petitioner emphasizes that the Order of the District Court for the Western District of Wisconsin of July 9, 2001, which actually committed the Petitioner to FMC-Rochester, did not contain the requisites contained in the Court's Order of December 21, 2000, which, he contends, are dictated by Title 18 U.S.C. §3142(i), that (continued...)

that the Petitioner is being held separately from persons awaiting or serving sentences, or being held in custody pending appeal, or that FMC-Rochester has the ability to abide by those conditions, consistent with the Petitioner's medical needs. Response to Motion to Dismiss Petition Without Evidentiary Hearing, at 3. In addition, the Petitioner now claims that he has not been afforded a reason-able opportunity for private consultation with his attorney. Id. Thus, the Petitioner asserts that his continued detention at FMC-Rochester violates the strictures of Title 18 U.S.C. §3142, making him a proper subject for Habeas relief.[4]

---

[3](...continued)
the Petitioner be kept separate from convicted persons, or that he be provided an opportunity to consult with his counsel. The Petitioner does not appear to raise this issue as a separate basis for his Habeas Petition, however, and we, therefore, express no opinion as to whether the Court's Order of July 9, 2001, violated the requirements of Section 3142.

[4]Section 3142(i) provides, in pertinent part:

> (i) Contents of a detention order -- In a detention order issued under subsection (e) of this section, the judicial officer shall --
>
> (1) include written findings of fact and a written statement of the reasons for detention;
>
> (2) direct that the person be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or

(continued...)

## III. Discussion

The Petitioner complains that his confinement at FMC-Rochester violates the proscriptions of Section 3142, as he is being housed, admittedly upon his own consent, with general population prisoners, and he has not had an opportunity to consult with his attorney in this matter.[5] Without addressing the many collateral issues that the Petitioner's Habeas Petition raises, such as whether he is challenging his confinement, rather than a condition of his con-

---

[4](...continued)
being held in custody pending appeal;

(3) direct that the person be afforded reasonable opportunity for private consultation with counsel; and

(4) direct that, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the person is confined deliver the person to a United States marshal for the purpose of an appearance in connection with a court proceeding.

[5]To the extent that the Petitioner is asserting that he should be, without limitation, released from custody, in accordance with USSG 5H1.4, his argument is without merit. Not only is the application of the referenced Guideline a discretionary decision, see, e.g., United States v. Crickon, 240 F.3d 652, 654 (7th Cir. 2001); United States v. Eagle, 133 F.3d 608, 611 (8th Cir. 1998), which would not require the Petitioner's release from prison were he convicted and sentenced to a term of imprisonment but, since the Petitioner has not been convicted, let alone sentenced, the applicability of USSG 5H1.4 is premature. Accordingly, we only address whether the Petitioner is properly housed in FMC-Rochester, rather than whether he should be confined at all.

finement, which would be a challenge more appropriate under a Bivens action, see, Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), or whether he is required to exhaust his administrative remedies with the Bureau of Prisons before bringing his Petition to this Court, we conclude that he is seeking relief, at least in the first instance, from the wrong Court.

As the Government concedes, this Court has the jurisdiction to hear to this Petition under Section 2241. According to Section 2241, an individual may bring a Petition for a Writ of Habeas Corpus when "[h]e is in custody under or by color of the authority of the United States or is committed for trial before some court thereof;" or where "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" As the Petitioner is in custody at FMC-Rochester, which is located in this District, and is under the direction of Warden Constance Reese, we plainly have jurisdiction over this Habeas Petition. See, e.g., Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 488, 494-95 (1973)("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Moreover, Section 2241 has been recognized as a potential avenue of relief for pretrial detainees. See, e.g., Fassler v. United States, 858 F.2d 1016, 1018 (5th Cir. 1988); Moore v. United States, 875 F. Supp. 620, 623 (D. Neb.

1994). Although our Court of Appeals has never exhaustively delineated the contours of a pretrial detainee's right of access to a Court, separate from the Court trying his criminal case, other Courts have held, in similar circumstances, that the fact "that we have jurisdiction does not mean that [the Petitioner] has sought an appropriate remedy for pretrial detention[.]" Fas-sler v. United States, supra at 1017; see also, United States v. Pipito, 861 F. 2d 1006, 1009 (7th Cir. 1987)(stating that the Dis-trict Court's decision to require a defendant to follow the review provisions provided in Title 18 U.S.C. §3145, instead of filing a Habeas Petition, was not in err); Kotmair v. United States, 143 F. Supp.2d 532, 533 (W.D.N.C. 2001)("Principles of judicial economy and efficiency weigh against allowing federal defendants to file separate habeas petitions where an appropriate remedy is available with the trial court."); Moore v. United States, supra at 623 (con-cluding that, in order for a Federal pretrial detainee to file a Section 2241 Motion, he "must have exhausted other available reme-dies," including the remedies afforded under Section 3145).

The most thorough analysis of a pretrial detainee's right of access to the Courts, through a Section 2241 Petition, is provided in Moore v. United States, supra. In Moore, the petitioner was detained, prior to his Trial in Federal Court, in a County Jail. Id. at 621. His detention was ordered by a United States Magis-

trate Judge, and affirmed by a United States District Court Judge. Id. The Petitioner did not, however, appeal his detention to the United States Court of Appeals. Id. Instead, he filed an "emergency petition for writ of habeas corpus," which sought a dismissal of the Indictment against him, as he believed the Indictment was based upon evidence obtained by means of an unlawful wiretap. Id. As a consequence, the petitioner was seeking release from custody. Id. at 622.

In Moore, the Court outlined the case authority concerning the access available to State pretrial detainees under Section 2241. Id. The Court noted that a State pretrial detainee had to be in custody, and had to have exhausted his available State remedies prior to seeking relief through a Section 2241 Petition. Id. The Court then turned to Federal pretrial detainees, and applied a similar analysis. Id. at 623. First, the Court observed that the detainee must be "in custody," in order to fall under the strictures of Section 2241. Then it went on to conclude that, in general, a Federal pretrial petitioner must exhaust all available remedies before advancing his claims in a Section 2241 Petition. Id. Specifically, in that case, the Court concluded that the petitioner had a remedy under Section 3145 -- an appeal to the United States Court of Appeals for the Eighth Circuit -- which he chose to ignore. Id. As the Court further explained:

> [E]ven assuming petitioner had exhausted his section 3145 remedies through an appeal to the Eighth Circuit, there is an additional exhaustion requirement due to the nature of petitioner's claim. As noted above, where a state pretrial detainee raises claims which would be dispositive of the underlying criminal charges, federalism principles dictate that the federal court decline review until the petitioner has exhausted the claims at the upcoming criminal trial. * * * Important considerations of federal court efficiency and administration require that the same rule be applied where a federal pretrial detainee raises habeas claims which would be dispositive of the underlying criminal charges.

Id. at 624.

According to the Court, such "important considerations" include the potential for Judge shopping, and duplicitous litigation. Id.

Similarly, the Court in Fassler v. United States, supra, expounded upon those instances in which a pretrial detainee must exhaust his available remedies prior to filing a Section 2241 Petition. There, the petitioner was detained, by a United States Magistrate Judge, pending Trial in Federal Court. Id. at 1017. He was advised of his right to appeal the Detention Order, and he did appeal the Order to the District Court, but not to the Court of Appeals. Id. Instead, he filed a Motion for Writ of Habeas Corpus under Section 2241, claiming the following:

> [T]he detention order was being used illegally and unconstitutionally as a punitive tool to force him to plead guilty; * * * it was not imposed by an impartial magistrate; * * * it placed an excessive and unjustified burden

> upon his defense and impaired his trial preparation; and * * * it was based on accusations of heroin trafficking that had no evidentiary foundation.

Id.

Although the case was ultimately moot by the time the District Court considered the Habeas Petition, since the petitioner had been convicted and sentenced on the offense which lead to his pretrial detention, the Court of Appeals for the Fifth Circuit, nonetheless, addressed the issue of the petitioner's ability to seek relief under Section 2241. Id. at 1018.

In that regard, the Court observed that, "[a]cting cautiously, we decline to hold that [Section] 3145 provides the exclusive means by which a person under indictment can challenge his pretrial detention," but that "the terms of the Bail Reform Act and the potential for abuse of the writ and for unnecessary duplication of appeals, as demonstrated below, should ordinarily provide strong incentive for defendants to employ Section 3145 appeals." Id. [emphasis in original]. In particular, as to the petitioner's contention, that he was unable to prepare for Trial while he was in pretrial detention, the Court noted that the Bail Reform Act required "any pretrial incarceration order * * * [to] afford a defendant the opportunity reasonably to consult with counsel and prepare his defense," and that the petitioner could have, therefore, "moved for additional relief to prepare his defense, or he could have

challenged this facet of detention on review by the district court, but it appears that he did neither." Id.

More recently, in Falcon v. United States Bureau of Prisons, 52 F.3d 137 (7th Cir. 1995), the Court of Appeals for the Seventh Circuit required a Section 2241 petitioner to seek his remedy through the Trial Court, rather than the Habeas Court, although it did employ a somewhat different analysis. There, the petitioner filed a Section 2241 Petition in which he claimed that his pretrial detention in Illinois, while he was on Trial in the Southern District of Florida, denied him the right to effective assistance of counsel. Id. at 137. The Court first concluded that a Petition under Section 2241 was not the appropriate avenue for review, as the petitioner was challenging the conditions rather than the fact of his confinement.[6] Id. Nonetheless, the Court went on to observe that, even if the petitioner had brought the claim as a Bivens action, he failed to pursue a judicial remedy he had before the Trial Court. Id. at 139. As the Court stated:

---

[6]While it is true that the Writ of Habeas Corpus is generally limited to challenges which attack the fact or the duration of confinement, the law of this Circuit authorizes the use of the Writ in order to challenge the conditions of confinement -- so long as the Petitioner has alleged "a substantial infringement of a constitutional right." Albers v. Ralston, 665 F.2d 812, 815 (8th Cir. 1981), quoting Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974). We express no opinion on the applicability of Albers, however, since we conclude that the Petitioner has sought relief in the wrong Court.

> Judge Moreno, who is presiding over Falcon's drug case pending in the Southern District of Florida retains jurisdiction over all pre-trial, trial and post-trial aspects of that case. In particular, in this case, we may presume that Judge Moreno acted in accordance with 18 U.S.C. §3142(i) in ordering pretrial detention for Falcon. Pursuant to §3142(i)(3), that order must direct the BOP to provide Falcon with "reasonable opportunity for private consultation with counsel." Moreover, Judge Moreno has discretionary authority under §3142(i)(3) to order Falcon into the custody of a United States Marshal if he determines that such action is necessary for preparation of his defense. Section 3142(i)(3) is designed to protect a defendant's Sixth Amendment right to counsel, and if that right is being infringed, Judge Moreno has the statutory authority to protect Falcon's access to counsel.
>
> It seems to us to go far afield to seek habeas corpus relief which could conceivably interfere with the trial judge's control of the criminal case pending before him. Any problem Falcon has with his access to counsel resulting from the nature of his pretrial detention should be addressed to Judge Moreno in the first instance.

Id. at 139.

The same reasoning applies here.

The Petitioner is confined, awaiting his Trial on criminal charges, because the Magistrate Judge determined, under Title 18 U.S.C. §3142, that detention was necessary because the Petitioner presents an unreasonable risk of flight. See, Attachment C, at 1. Therefore, the Petitioner has a remedy either as to his detention

as a whole, or as to certain aspects of that detention, under Section 3145. Section 3145 provides, in pertinent part, as follows:

> (b) Review of a detention order. -- If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly.
>
> (c) Appeal from a release or detention order. -- An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title. The appeal shall be determined promptly.

While we do note that the Petitioner filed a Writ of Mandamus before the Court of Appeals for the Seventh Circuit, we have not been informed of the substance of that Petition, but note that the Petition was denied, without further comment, by the Court. Attachment F. More importantly, there is no showing that the Petitioner appealed the Magistrate Judge's Detention Order to the District Court, or to any superior Court. Here, the Petitioner is merely alleging that his continued confinement at FMC-Rochester violates the provisions of Section 3142, so, plainly, he can employ the provisions of Section 3145(b) in seeking a "revocation or amendment" of his Detention Order. He has failed to do so, however.

Instead, the Petitioner invites another Court to enter the foray of his criminal case which, so far, appears to have occupied the Trial Court. While we understand that this case is somewhat different than, for example, Moore v. United States, supra, or Fassler v. United States, supra -- since the Petitioner is challenging his confinement at FMC-Rochester, rather than seeking outright release from detention -- we conclude that he must first seek his relief from the District Court for the Western District of Wisconsin. In addition to the authorities we have recited, our reasoning has been guided by notions of judicial economy and efficiency, when viewed in light of the interplay between the relief sought by the Petition for Writ of Habeas Corpus, and the proceedings which are ongoing in the Petitioner's Trial Court. Quite simply, two Courts should not do the work properly committed to one.

Specifically, the Petitioner complains that he is not being held separately from those persons who await or who are serving sentences, or being held in custody pending appeal, in violation of Section 3142(i) and the Magistrate Judge's Order dated December 21, 2000. However, as the Respondent explains:

> As a pre-trial inmate, petitioner is not housed with sentenced inmates unless he signs a separation waiver. Upon petitioner's arrival to FMC Rochester on July 12, 2001, petitioner would have been instructed that he

> could not remain in the general population, but would be placed in the Special Housing Unit (SHU), separating him from convicted felons, if the separation waiver was not signed by him. To the best of my knowledge, petitioner would have signed a separation waiver at the time of his arrival at this facility. He has never expressed any concerns to me regarding his being housed with sentenced/convicted inmates. If a pre-trial inmates does not waive separation, a copy of the form indicating that he did not wish to be housed in the general population or waive separation, according to standard procedures, is placed in his Central Files. Likewise, if a pre-trial inmate signs a waiver of separation, according to standard procedures, it is kept in the Central File. Here, no record, indicating one way or the other, was in the file. Therefore, to complete his Central File, petitioner was presented a separation waiver form on February 21, 2002. Petitioner signed this form, this form has been placed in his Central File, and he will remain in the general population in the M/S Unit.

Declaration of Jennifer Hoehn, at ¶6.

The Petitioner now, however, complains that his consent was not "voluntary," because he would have been placed in administrative segregation had he not signed the waiver form, and that there is a lack of evidence that FMC-Rochester can maintain a person, with the Petitioner's physical ailments, in such segregation.

Clearly, this concern should be properly addressed by the Court handling the Petitioner's criminal case. This is especially true because the assigned Magistrate Judge recently directed that the Petitioner be confined at FMC-Rochester for a period of thirty

days, pending a competency evaluation. Drawing a different Court into the matter would improperly interfere with the efficient administration of the Petitioner's case, thereby potentially prolonging the pretrial phase of his case. As such, the Petitioner's remedy is to pursue an amendment to the Trial Court's Detention Order, in accordance with Section 3145. Until he seeks such a remedy, this Court should not exercise its authority over the Petitioner.

As a second argument, the Petitioner alleges that he is supposed to be afforded a reasonable opportunity for private consultation with his attorney. Although the Petitioner has not asserted that he has been denied any such consultation with the attorney who is assigned to his criminal case, he complains that his attorney assigned in this matter was unable to meet with him prior to the time that a response was due on this Petition. Specifically, he complains that his attorney attempted to meet with him at some time prior to February 11, 2002, although he does not recount the efforts that were undertaken to facilitate such a meeting. See, Response to Motion to Dismiss Petition Without Evidentiary Hearing, at 3. The Petitioner, and his attorney in this action, were finally able to meet on February 28, 2002. See, Affidavit of Kathi M. Troje, at ¶8.

While we are concerned that a meeting, between the Petitioner and his attorney assigned in this matter, was the subject of any delay, it appears, nonetheless, that the blame lies equally with the Petitioner's attorney, and the staff at FMC-Rochester.[7] Reduced to its essentials, however, the issue presented is whether the Petitioner has had access to the attorney, who has been assigned in his criminal case, and there is no allegation that such access has been denied to him. Even if there were a colorable claim, that FMC-Rochester has denied the Petitioner's access to his attorney, we would still conclude that the issue is properly raised, in the first instance, with the Trial Court, especially since there has been continuous litigation concerning the Petitioner's approach with his Court-appointed counsel. See, Attachment D, at 2-3, 8-9, 10-11.

---

[7]The Petitioner's case-manager explained that Petitioner's attorney, who was assigned in this matter, did not request to visit with the Petitioner, and that the attorney sent no correspondence to the Prison. See, Declaration of Jennifer Hoehn, at ¶5. The Petitioner's attorney asserts that she did not know that Jennifer Hoehn ("Hoehn") was the Petitioner's case manager prior to learning that fact from the Government's Responsive Memorandum, and therefore, she did not make such a request from Hoehn. See, Traverse to Government's Reply, at 1. Although the Petitioner's attorney has explained the actions that she took, between February 21, 2002, and February 28, 2002, to arrange a meeting with the Petitioner, see, Affidavit of Kathi M. Troje, we have no similar recounting of the time period before February 11, 2002, when the Petitioner's Response to the Government's Reply to the Petition was due.

We also understand that the Petitioner's contention, that he wrote to the Magistrate Judge concerning the terms of his detention, as noted in the Magistrate Judge's Order of August 1, 2001. Attachment D, at 8. The Petitioner further claims that, "rather than deeming this a pro se challenge of the terms and conditions of his current detention," the Court "took the action of forbidding any action on Mr. Bolt's pro se letters." Response to Motion to Dismiss Petition Without Evidentiary Hearing, at 4, citing Exhibit 1, Attachment D. He also alleges that "the magistrate has suspended all proceedings in Mr. Bolt's case pending his return to Wisconsin," and that such action "deprives Mr. Bolt of any means of challenging the terms and conditions of his detention in that court." Id.

We do not construe the Magistrate Judge's Orders as does the Petitioner, however, and the Petitioner has not provided this Court with a copy of the Petitioner's letter, which is referenced in the Magistrate Judge's Order of August 1, 2001, and which, apparently, took exception to the Magistrate Judge's Order of July 3, 2001. Moreover, the Order of the Magistrate Judge of August 1, 2001, advised that "Christopher Bolt submitted to the court a rather pointed letter taking exception to my July 3, 2001 order," but the July 3, 2001, Order did not concern the Petitioner's confinement at FMC-Rochester. Attachment D, at 1-3. Rather, by Order dated July

9, 2001, the Magistrate Judge directed the Petitioner to FMC-Rochester. Attachment D, at 6. Thus, we cannot fault the Magistrate Judge for not construing the Petitioner's letter as a pro se challenge to the terms of his confinement.[8] More importantly, however, the Petitioner elected not to appeal that Order to the District Court.

---

[8]Although, as noted, we have not been provided with a copy of the referenced letter of the Petitioner, we seriously doubt that it had anything to do with the "terms" of his confinement. As the Magistrate Judge noted, in discussing the contents of the Petitioner's "pointed letter taking exception to my July 3, 2001 order:"

> In his letter, Bolt demands that I consider myself "recused" from this case and he demands that I order his attorney, Roger Klopp to return his legal materials and then remove him from this case.
>
> Bolt is free to disagree with my observations and decisions regarding his mental and physical state (although he might wish to tone down his rhetoric a bit), but I am not biased against him in this case. My conclusions are based on Bolt's words and deeds in this case and in fact are bolstered by his most recent letter. I have been impartial toward Bolt in this case and will continue to be impartial toward Bolt in this case. There are no grounds for me to recuse myself.

Attachment D, at 8.

By every appearance, the Petitioner's letter, regarding the Magistrate Judge's Order of July 3, 2001, had little, or nothing, to do with the "terms" of his confinement.

Finally, we find no merit in the Petitioner's suggestion that the Magistrate Judge abrogated his statutorily imposed duty to consider Motions under Section 3145 in an expeditious manner, as he only ruled that "[e]verything is on hold while [Petitioner] recuperates from physical ailments that required me to commit him to the custody of the Bureau of Prisons for necessary medical treatment at the federal medical center." Attachment D, at 11. The Court went on to expressly note that, "[o]nce [Petitioner] is physically able to return to court, we will hold the competency hearing." Id. We cannot construe these statements to mean that the Magistrate Judge had refused to address any concerns the Petitioner holds concerning the terms of his confinement at FMC-Rochester.

In sum, we conclude that the Petitioner's appropriate remedy, concerning the terms of his confinement at FMC-Rochester, rests in the filing of a Motion for the revocation of, or amendment to, his detention under the provisions of Section 3145(b). As a consequence, we recommend that the Petitioner's current Petition for a Writ of Habeas Corpus, under Section 2241, be denied, without prejudice to its renewal, however, once the Petitioner has exhausted his statutorily provided remedies.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be DENIED, without prejudice to its renewal once the Petitioner has presented his concerns to the Court or Courts which have jurisdiction over his pending criminal case.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **July 16, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections

shall timely order and file a complete transcript of that Hearing **by no later than July 16, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.